We're going to take a deep breath and we're going to go on to the second case of the day. And that is 22-2313 Citizens Insurance Company of America v. Wynndalco Enterprises. And okay. Okay, good morning, Mrs. Ognebene. I'm probably just doing terrible things to your name. No worries. Good morning, Your Honor. May it please the court. My name is Kelly Ognebene and I represent the Plaintiff Appellate. Would you say that once again, please? Sure. It's Ognebene? Ognebene. Well, it's beautiful. Thank you. And I've repeated it to myself over and over. I don't murder it again. Go ahead. I represent Plaintiff Appellant Citizens Insurance Company of America in this action. This is an insurance coverage dispute arising out of two underlying class actions that are against the insured Wynndalco alleging violations of the Illinois Biometric Privacy Act, or BIPA as I will refer to it. The general liability policy that Citizens issued to Wynndalco contains a distribution of material in violation of statute's exclusion. Because the only reasonable interpretation of the exclusion is that it applies to statutes that regulate the wrongful distribution of information, such as BIPA. The exclusion unambiguously applies to BIPA and Citizens has no duty to defend or indemnify the underlying suits. Now, as I understand your reading of the policy, you are not arguing for a completely plain text reading of the catch-all exclusion. In that you agree that material being disseminated, etc., has in some way implicated privacy interests. That's how you preserve statutory claims for Lanham Act, Copyright Act, Flandre, and libel. So, are you agreeing that the exclusion is ambiguous and that we have to apply as justem generis in order to impose some limitation on the breadth of the exclusion? No, your honor. Our position is that when you construe the exclusion as a whole, as Illinois law requires, it becomes very obvious that then it applies to statutes that regulate privacy interests. So, when you look at the title of exclusion, along with the statutes that are enumerated therein, and then the language that is used in what I will refer to as the catch-all, the last part of the exclusion, that taken together as a whole, it's very clear that the exclusion seeks to preclude coverage for statutes governing privacy interests. Now, what you're saying, I take it then, is we do not have to resort to a doctrine like justem generis. Correct, yes. Our position is that the exclusion as a whole unambiguously applies to statutes such as BIPA, so there's absolutely no need to resort to any canons of construction to resolve an ambiguity, since there is no such ambiguity here. So then, what is your answer to the appellees when they say that would eviscerate coverage that is explicitly provided elsewhere in the policy for related privacy claims, like slander, libel, copyright claims, if your position is, under this exclusion, all privacy-related claims are excluded? Sure, so our position is that, so of course you just mentioned, so personal and advertising injury, here it covers publication of material that violates the right of privacy. It also includes false arrests, malicious prosecution, wrongful eviction, slander and libel, use of another's advertising idea, and copyright infringement. But none of those offenses, whether they're liabilities based on common law or statute, are affected by applying the exclusion to statutes regulating privacy concerns. There we're talking about totally different offenses that are not based on the right of privacy. So coverage remains wholly intact, both for common law claims involving those offenses, as well as for statutory claims such as the Lanham Act, the Copyright Act, and the Ellen Lee Slander and Libel Act. But it also remains intact for, importantly, for common law privacy claims. So how does this work in reality? Because when people file cases, they file them on multiple bases sometimes. So they'll assert a common law claim that privacy was violated, and then a statutory claim. And so if I'm understanding you correctly, and it may not be, you're saying the statutory claim, there'll be no coverage under this policy, citizens' policy, but the common law claim would go forward and there would be coverage under citizens' policy? I think it would depend on the allegations in the complaint. If the common law claim was based on the same conduct that allegedly violated the statute, then under the case law in this circuit, coverage would be excluded for the common law claim. But I think it's important to note that there isn't any case law saying that we're not going to enforce an exclusion that applies to preclude coverage for certain risks while leaving many other risks, coverage for those risks, still intact. So I think this is more of a red herring type of argument because, like I said, all of the other personal advertising injury offenses would still have coverage for both the statutory claims and for the common law claims. So, I mean, we're really just talking about a very specific type of claim that falls within this exclusion. Should I think? In other words, you do not believe that the exclusion is ambiguous or even potentially ambiguous, correct? That is correct, Your Honor. But if the court were inclined to find and say, oh, well, there is some sort of facial ambiguity here and we're inclined then to resort to the canons of construction, it is still our position that BIPA continues to fall within the exclusion. As you are all aware, with respect to Justin Generis, using that canon, we're limiting the general to the listed specific. Here, all of the statutes that are enumerated in the exclusion, they all protect privacy by regulating the wrongful distribution of information. Does it matter that they address different forms of privacy? I would say it does not, Your Honor. For one, the language in the exclusion, either in reference to the title, the statutes themselves, or the catch-all language makes no distinction between the different privacy interests and instead makes clear that it applies to both secrecy and seclusion interests. But even if we are utilizing the privacy analysis that the district court engaged in, then BIPA still falls within the exclusion because BIPA does protect both secrecy and seclusion. It protects a person's right to seclusion in their biometric information by prohibiting collection without consent while also protects the right of secrecy in such information by prohibiting the distribution of biometric information without consent. So I think either way, again, BIPA still falls within the exclusion. And I would like to just note briefly, too, that the West Bend decision issued by the Illinois Supreme Court is in opposite here. That exclusion, of course, had a different title, it had different language in the catch-all, and it did not include the FCRA or FACTA. So the West Bend exclusion by title and by text limited itself to statutes that regulate the methods of communication, whereas here, conversely, the exclusion by both title and text make clear that they apply to statutes that regulate the wrongful distribution of information. And there's no question that that's what BIPA is and what BIPA does. So citizens' interpretation of the exclusion is the only reasonable interpretation because it comports with Illinois' rules of policy interpretation, which require utilizing the ordinary definition of policy terms and to construe those terms with reference to the ordinary, average, reasonable person. It also gives effect to all of the terms in the exclusion and does not result in any sort of illusory coverage issue. On the other hand, the appellee's interpretation disregards the plain language and seeks to write certain words out of the exclusion. It also improperly relies on canons of construction to distort the plain language of the exclusion in order to create an ambiguity where none exists. Now, the title of the group of exclusions doesn't say anything about privacy, does it? No, it does not. The word privacy is not used specifically in the exclusion, which I think here it's important to note that. So obviously, for example, in the American states' decision when the undefined term privacy was used, that created an issue as to then whether we were talking about seclusion or secrecy of interest. Whereas here, the exclusion references different statutes, some of which protect seclusion, some of which protect both seclusion and secrecy, and then makes plain in the verbiage that it uses in the catch-all that it is applying to both secrecy and seclusion interests. So I think, again... Okay, the fact that the title doesn't say anything, would that suggest that the privacy gloss you are using to harmonize this group of exclusions is not actually something that the drafters of the policy had in mind? I don't believe so, Your Honor. I think Illinois law is clear that while we can consider the title of the exclusion, that in itself does not alter the text of the exclusion, that we have to look at it as a whole. And when doing so, it becomes very obvious what the intent was here. I think it's maybe helpful to note that in the Massachusetts Bay v. Impact decision, the court specifically found that the main purpose of a very similar exclusion, the recording and distribution of material exclusion, is to exclude from coverage statutes that protect and govern privacy interests. And in making that finding, it pointed to other decisions which have applied the similar exclusion, and it has been within the context of, or has been only applicable to privacy statutes, such as statutes governing drivers' personal information, or to statutes governing credit card users' personal information. Okay. I need a really careful explanation, please, as to why precisely you think exactly that the catch-all is not ambiguous. I need help. I'm admitting it. Okay, so the catch-all states that it applies to any other laws, statutes, ordinances, or regulations that address, prohibit, or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information. So when we look at the term any, the ordinary meaning of that term is typically without restriction. It means every. And again, when we look at the exclusion as a whole, we know that we're talking about privacy interests. So specifically, the catch-all says that it applies to any statute that addresses dissemination, disposal, collecting, or distribution of material or information. And BIPA, when you look at that, itself states that it regulates the collection, retention, disclosure, and destruction of biometric identifiers and biometric information. So when you're reviewing the exclusion and the statute side-by-side, I don't think it really could be any clearer that BIPA directly comes within the scope of the exclusion's plain language. You know, the FLEs have tried to come up with ways to get around that obvious policy language, but for the reasons that we've discussed, I mean, there is no illusory coverage issue, and the canons of construction aren't applicable, but even if they are, then BIPA still falls within the exclusion. All right. I will give you a few minutes for your rebuttal. Thank you, Your Honor. But now we're going to hear from Mr. Freeman. Thank you. Good morning. May it please the Court, my name is Zachary Freeman, and I represent the appellees. This case arises directly out of Citizens' refusal to defend its insured Wendolco after Wendolco was sued due to its involvement in the sale of a facial recognition product to the Chicago Police Department. Citizens has defended its decision to leave Wendolco defenseless in this action, in the underlying action, in reliance on an ambiguous catch-all clause. What words are ambiguous in that clause? Let's go through it. What specifically is ambiguous? The illusory argument is something different, but what specifically about Subpart 4 is ambiguous? Well, what's ambiguous about it is you cannot identify which statutes it actually applies to. Well, I sure can. It says any statute that addresses prohibits or limits. I'm just wondering what words are ambiguous? Well, no specific word is ambiguous, but when you read the catch-all and you take it in context with the entire policy, it's impossible to determine the scope of the catch-all exclusion and it ends up swallowing the rule. And the standards, when you're in the duty to defend context, we're not in the duty to indemnify context, we're in the duty to defend context. And in that standard, under controlling Illinois law, you have the Gillen v. State Farm case. And what that case said is, if the policy language is susceptible to more than one reasonable meaning, it is considered ambiguous and will be construed against the insurer. Importantly, a policy provision that purports to exclude or limit coverage will be read narrowly and will be applied only where its terms are clear, definite, and specific. So in order to find ambiguity, and I want to make sure this is your argument, it's interesting to me. In order to find ambiguity, we should consider the catch-all provision in the context of the other policy terms. And it's not just the words of the catch-all by itself that make the catch-all ambiguous. It's the words of the catch-all plus the other policy terms. In other words, we can't just isolate the catch-all and determine whether that's ambiguous. We need to consider it in the context of the entire policy. That's correct. What you need to look at is see if the words of this catch-all provision create conflicts with actual policy coverages. And that's exactly what happens here. This plain text interpretation of the catch-all provision is so broad that it absolutely effiserates the actual policy coverage. The copyright claims is the most obvious because the policy expressly provides coverage for copyright. But this interpretation, the plain text interpretation, would mean that you can't bring any, there's no coverage for claims brought under the Copyright Act. Those two provisions conflict, and you have to interpret this in favor of the insured and in favor of coverage. And that means that this plain text interpretation must yield. And that's why the controlling law is that these provisions are narrowly construed, and they're only applied when it's clear, free from doubt, that this applies to BIFA. So the courts, the district court opinions have struggled with this, but they've all said, well, maybe it is, maybe it isn't. It's ambiguous. Duty to defend. That's the end of this case. As soon as you get to the eusium generis doctrine, there's a duty to defend. And so I think Judge Roebner was absolutely right. Citizens is advancing two different arguments. The plain text one and this privacy argument. The only case, there's a circuit court transcript that they've attached that accepted the privacy argument, and then this Massachusetts Bay case in North Carolina, which applied North Carolina law, and expressly said, we're not filing West Bend because we're under North Carolina law. So those are the cases that have accepted this narrowing privacy interpretation. But this privacy interpretation itself makes very little sense. The exclusion doesn't use the word privacy. It doesn't use the word secrecy. It doesn't use the word seclusion. Even in the case that they like, that they cite from Below Cheese Merchants, the court said, if this was about privacy, somebody would have said so. The title would be have the word privacy in it, or seclusion, or secrecy. It doesn't. It's a very broad exclusion that they put in there, and now they're trying to take advantage of to claw back the covered provisions. And that's what's happening. In other words, your bottom line is that the ambiguity arises in conjunction with the other provisions that go before it. Correct. Correct. There's ambiguity with the... To you, that's the entire key. I believe that's accurate. There's ambiguity that is created in lots of different ways in this case, with the differences between the coverage that's provided and the scope of the catch-all, but also within the exclusion where you have the TCPA and the CAN-SPAN, which are about emails and spam, and then you have the FCRA and the FACTA, which is about financial information. So if we get into this discussion about privacy and what types of privacy, the Illinois Supreme Court in West Bend v. Krishna said that BIPA is fundamentally different than the TCPA and the CAN-SPAN. So controlling Illinois law has said that these statutes are different. And then we get into the FACTA and the FCRA with the credit reporting agencies, and the analogy is, well, BIPA regulates, prevents the disclosure of information just like those. But those statutes still are materially different, because biometric information is very different than credit reporting agencies releasing financial information. It is immutable. It is personal. It almost is a privacy interest that's more about bodily integrity. So it's a different type of privacy interest. And when you go to the BIPA in the findings, it says there, we want to have this law in place to protect biometric information, which is your voice print, your face scan, your fingerprints, because that's immutable. It's unique. And that's a very different privacy interest. So this privacy limitation, which they're adopting as a fallback because they realize that this plain text interpretation absolutely eviscerates the policy, it doesn't make any sense. There's no common theme. There's all different types of privacy. And if they had been tended to and said, this is an exclusion for privacy torture, this is an exclusion for privacy statutes, secrecy, seclusion, none of those words are in there. And additionally... Additionally, the BIPA statute was passed in 2008. This policy was drafted in 2019. They had more than a decade to sort of identify, well, here's these statutes that give rise to huge liability that we don't want to cover, and they never did it. And now they're relying on this catch-all rather than being expressed. When the standard is, an exclusion is narrowly construed. This is the most deferential sort of contract canons of interpretation because of the strong policy interest in providing insured parties with a defense. Here, Wendalka was left without a defense in a major BIPA litigation, and this is where we are today. So there's strong policy reasons why the duty to defend context, all of these ambiguities are resolved in favor of the insured. And if we go back to the West Bend v. Krishna case, which is the closest controlling case we have on file, which the Illinois Supreme Court, there's three things that the Supreme Court did in that case. One, it rejected the sort of plain text interpretation because the exclusion in that case was similarly, like, each of the individual words was clear. You could understand it. So the court could have said, it says what it says, therefore, there's no duty to defend. That's not what happened. It proceeded, it found it ambiguous, and it went through the eustim generis argument and found that BIPA was materially different. It also said there's an alternative or a second holding. It said, moreover, to the extent there's an ambiguity, we have to find a duty to defend. And so either way that this court analyzes it, because there's an ambiguity inherently before you get to eustim generis, there's a duty to defend. If you get to eustim generis, there are more than one interpretations. You could say, well, BIPA's close enough or BIPA's not close enough, but here, at the duty to defend, this isn't the duty to indemnify stage, at the duty to defend, all of these ambiguities have to be extruded in favor of coverage. So Citizens is trying to sort of mix and match the plain text with the eustim generis and saying, well, there's still some coverage that remains. But saying, oh no, this is fine, this conflict between these provisions is fine, because there's still false arrest, there's still malicious prosecution, oh, but there's no advertising coverage, there's no copyright coverage, there's almost no privacy coverage, there's almost no slander or libel coverage, because there's statutes. There's the Illinois Slander and Libel Act. There's the Illinois Right to Publicity Act. So all of that would be excluded under the right to privacy, that would be excluded under both of their proffered interpretations. But the court does not have to go all the way down these rabbit holes, because there's a fundamental ambiguity right off the bat, and I think that in the first Thermaflex case, where the judge said, maybe BIP is close enough, maybe it isn't. Either way, there's a duty to defend. That's as far as the court really has to go to resolve this case. The duty to indemnify a situation, which is sort of down the line, is a very different situation, but that's not where we are. Did the policy at issue in the Cheese Merchants case present the same type of conflict between policy provisions that purport to include certain statutory claims like copyright and Lanham Act claims and a catch-all exclusion that, if read literally, would purport to exclude those same claims? In other words, is that how you would distinguish Cheese Merchants from this case? I distinguish Cheese Merchants for two reasons, and the first is, it adopted the broad, expansive interpretation, and that's contrary to the applicable canons, which says, when you're talking about a policy exclusion, it's narrow construction. The exclusion has to be clear, it has to be free from doubt, so these catch-all exclusions are sort of right out of the gate, difficult to defend. And so, one, it gave lip service to that doctrine, but it didn't apply it. Ultimately, it said, this is broad, that's what it should be, so it's broad. And in Cheese Merchants, it didn't address the conflict with the primary coverages at all. It didn't do what the district court did in this case, which was to see, well, what's the real-world impact that this interpretation would have on the rest of the policy, which is an important consideration. So those are the two ways that I think Cheese Merchants erred. One, is it didn't follow the canon of requiring there to be a narrow construction, and two, it didn't engage on the issue of illusory. And the district court in this case did, the district court in the recent Thermoflex opinion did as well, as well as in the, what I call Thermoflex I, the first of the decisions. Would I be correct if I thought that Cheese Merchants did not present the court with the same conflict between what arises here, between provisions of the policy that grant coverage for certain statutory claims and a broadly worded exclusion that purports to deny coverage for those same claims? If I'm understanding your question, and I'm not certain that I do... Neither do I! If the specific language in the exclusion or the policy at issue in Cheese Merchants was materially different than the exclusion and the policy here, I don't think that there was a significant or material difference, but I'd have to go back and compare the exact language. But what I think Cheese Merchants got wrong is that it didn't follow the law that these exclusions need to be narrowly construed, and it didn't engage on this issue of the conflict between the primary coverages and the exclusion. It also didn't really engage in the different types of privacy at issues between BIPA and the other statutes. I hope I answered your question, but I think that as Judge Roepner pointed out, once this is ambiguous, then there's a duty to defend. Citizens did not offer any defense to Wendalko in this case. There has been a lot of litigation in the district courts about this. There's at least four courts have held that there's a duty to defend. There's the Cheese Merchants and the Fruit Fusion case which follows it, which went the other way. None of those courts adopted the privilege limitation because the word privilege or not privilege, privacy limitation, the words privacy or seclusion or secrecy aren't in there. Let me just go back for a second. So you're saying that Wendalko didn't address it towards the conflict? Yes. It didn't address it. The struggle of the district court about this issue, while not dispositive, is additional compelling evidence that the application of this exclusion to a BIPA claim is at a minimum ambiguous, so this court should affirm it. Okay. I'll just make a few points in response to counsel's arguments. Could I ask you to start nearly where counsel left off, which is to address the point that the words privacy, seclusion, secrecy are nowhere in or around this exception. Exclusion. Right. That's true. And as I mentioned before, I think that that is to the benefit here with respect to the comprehensiveness of the exclusion. So yes, the word privacy, the undefined term privacy is not thrown into the exclusion, which NIDAB itself could have created an ambiguity with respect to what does privacy mean. So instead, the exclusion is way more detailed. It includes statutes that their purpose is to protect privacy interests and various aspects of that, both secrecy and seclusion. While those words are not used, that's what those statutes are, and they are specifically referenced therein. And then the verbiage of course used within the catchall when we are talking about collection, distribution, disposal of information. That all clearly speaks to privacy interests. Could I ask you to address, Judge Roeder said it much better than I did, but she said ambiguity arises in conjunction with other provisions that go before it. So if the contract, if this provision said everything is excluded, let's just say, forget illusory, it says everything is excluded. That's not ambiguous by itself. It means everything is excluded. But what's your reaction to that? Can ambiguity be created by what comes before it in the policy which says the policy covers the following things? And then you've got this specific provision in subpart D says everything is excluded. Forget illusory, does what comes before everything is excluded make the catchall ambiguous? Yes, I believe in certain instances that could be the case. It's not here. For example, if the policy said we provide coverage for negligent advertising. Why is it not here if the exclusion is overbroad and if the exclusion would exclude things that are specifically covered in the earlier parts of the policy, why is the exclusion at least not ambiguous, if not illusory? Any exclusion's purpose is of course to exclude certain claims for coverage. So here that would be statutory privacy claims. That's it. All of the other personal and advertising injury offenses, coverage for them, whether it's by common law or statute, remain. This exclusion has absolutely no effect on them at all. So again, this is just a red herring type of argument. I realize I'm out of time, so I will just end by saying that the purpose of these catchalls are to, it's impossible for an insurance carrier to list every statute or rubric of statutory liability that's in fact when the policy was drafted or for the insurer to anticipate how the law may change with respect to statutes that may come into effect or how those statutes are interpreted. So here the catchall is comprehensive and detailed. The words that it uses and then the exclusion as a whole, including other privacy type statutes. So I don't believe that appellees should be allowed to turn that clear language and the broadness of the exclusion on its head to obtain coverage that they simply just didn't bargain or pay for. Okay. Well, thanks to both of you and the case will be taken under advisement and we are going to take a 10 minute break. Okay?